IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MATTIE D. GREVIOUS, o/b/o A.T.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv706-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The *pro se* plaintiff Mattie Grevious filed this lawsuit on behalf of her daughter, A.T.G.,[1] to review a final judgment by Defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that A.T.G. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. On March 12, 2003, the Appeals Council remanded the claim for a new hearing before the ALJ. On remand, after a supplemental hearing, the ALJ again denied the claim. (R. 40). On March 26, 2004, the Appeals Council again remanded the claim for further proceedings due to an "error of due process." (*Id.*) On remand, the ALJ was directed to

> obtain updated records from the claimant's treating sources, including all

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to her only by her initials, A.T.G..

> clinical, diagnostic, laboratory and treatment information. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in obtaining evidence from treating sources. The Administrative Law Judge will give the claimant and her representative an opportunity to object to, comment on and refute any evidence not submitted by the claimant or her representative, . . .

(R. 40-41).

The ALJ held a third administrative hearing on June 23, 2005. After the hearing, the ALJ again denied the claim. (R. 18). The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[3] For the reasons that follow, the court concludes that the Commissioner's decision denying A.T.G. supplemental security income benefits is due to be affirmed.

## I. STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments does not meet, or is not medically equal or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d) (2003). In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

3

## II. PLAINTIFF'S CLAIMS

Unfortunately, the plaintiff, proceeding *pro se*, fails to specifically identify the issues presented for the court's resolution in this case. However a *pro se* plaintiff is entitled to a liberal construction of her claims. *Hughes v. Rowe*, 449 U.S. 5 (1980). Consequently, the court construes the plaintiff's "Statement of Issues" as raising the following issues.[4]

1. Whether the ALJ's finding that, although A.T.G.'s asthma is a severe impairment, she does not have marked limitations is supported by substantial evidence. Specifically, the plaintiff argues that, with her asthma, A.T.G. "cannot function physically as a normal child."

2. Whether the ALJ erred by finding the plaintiff's testimony not credible.

3. Whether the ALJ failed to properly question the medical expert.

4. Whether The ALJ failed to adequately inform the plaintiff of her right to obtain representation, or to discharge his duty to assist the pro se plaintiff in developing the medical evidence necessary to prove A.T.G.'s case. Coupled with this issue is the plaintiff's argument that she received insufficient notice

---

[4] The plaintiff also raises issues related to the earlier administrative proceedings. For example, she complains that the ALJ was biased against her during the second administrative hearing; the ALJ failed to properly consider A.T.G.'s school records in his December 27, 2001, decision; and the ALJ improperly relied on the non-examining consultative physician, Dr. Cocoris. Any errors that occurred at the earlier administrative proceedings are, at this juncture, harmless because the errors occurred prior to the Appeals Council's final remand. A third administrative hearing, with a new administrative law judge, was held and thus, remedied any infirmities in the earlier proceedings.

To the extent that the plaintiff complains that the record contains an unsigned SSA form and a SSA form not applicable to her claim, the court concludes that these two documents are simply administrative forms that are immaterial to the court's review of the record.

>    of the June 23, 2005 hearing.
>
> 5.    Whether the ALJ failed to fully properly develop the record because he failed to secure teacher questionnaires from all of A.T.G.'s teachers and he failed to consider a note from one of A.T.G.'s teachers.

*See Pl's Statement of the Issues*, doc. # 12.

### III.  DISCUSSION

The ALJ, in his opinion, followed the regulations' three steps as listed above when he analyzed A.T.G.'s claim.  After doing so, he concluded that A.T.G. is not disabled and, therefore denied her claim for supplemental security income benefits.  Under the first step, the ALJ found that A.T.G. is not engaged in substantial gainful activity.  At the second step, the ALJ found that A.T.G. has a severe impairments of asthma.  (R. 22).  Next, at step three, the ALJ found that A.T.G. did not have an impairment, individually or in combination, that meets or medically equals any of the impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  (R. 18).  In so finding, the ALJ considered Listing 103.03, Asthma.  (R. 22).  The ALJ also concluded that A.T.G.'s "impairment does not result in "marked and severe" functional limitations."  (R. 27).  Consequently, the ALJ concluded that A.T.G. is not disabled.

**A.  The Medical Evidence.**  After the third administrative hearing, the ALJ concluded that A.T.G. suffers from the severe impairment of asthma.  (R. 22 & 27).  A.T.G. was ten years old at the time of the hearing before the ALJ and had just completed the fifth grade in regular classes.  (R. 342).  Her mother described A.T.G.'s disability as follows.

> Q: All right, why don't you begin by telling me in your own words why you think your daughter is disabled pursuant to the terms of the Social Security Act?
> A: Well, sir, because of her limitations on her, her physical abilities to perform as a normal child with frequent visits to the emergency room because of severe asthma and, I mean, and she just, her physical abilities are limited.
> Q: How?
> A; Very limited. Because when she go outside to play with the other kids she's out there 3 or 4 minutes, she back in the house because, holding her chest, having very difficulties in breathing and that results to her either getting on the nebulizer, taking her Pulmacort or visiting Baptist. So she stays in the house most of the time. When she's at school she, recess, she sits on a bench. Very seldom does she participate with other kids and she's made trips to the nurse at school and to the office during school time complaining with chest pain and difficulty breathing.

(R. 342).

Her mother alleges that A.T.G. became disabled on September 1, 1999.[5] (R. 17). She protectively filed for disability on A.T.G.'s behalf on December 1, 1999. (*Id.*). On January 1, 1999, A.T.G. was seen at Baptist Hospital's emergency room complaining of coughing. (R. 239-240). A chest x-ray was normal. (R. 245). A.T.G. was diagnosed as suffering from bronchial spasms and acute bronchitis. (R. 240-41). She was prescribed Prelone and Ceclor and instructed to take her medication as directed. (*Id.*).

On May 2, 1999, A.T.G. was again seen at Baptist Hospital's emergency room complaining of coughing, wheezing and abdominal pain. (R. 243, 252). Chest x-rays indicated no abnormality. (R. 254-55). She was diagnosed as suffering from Bronchospasm

---

[5] Although her mother initially asserted an onset date of June 25, 1994, A.T.G.'s date of birth, she amended the date of onset to September 1, 1999. (R. 17).

and acute exacerbation of asthma. (R. 249). She was prescribed Albuterol, Prelone, and Amoxil and directed to use a vaporizer. (*Id*.) Follow-up treatment was also suggested. (*Id*.)

On September 27, 1999, A.T.G. was seen at Baptist Hospital's emergency room having trouble breathing. (R. 257-262). At that time, based on a chest x-ray, she was diagnosed with mild pneumonia as well as asthma. (R. 257, 263). A home asthma machine and protocol were recommended, Augmentin and Prelone were prescribed, and follow-up with her primary care physician was suggested. (R. 258-60). Treatment notes indicate A.T.G. was exposed to smoke from her father. (R. 258).

On March 15, 2000, A.T.G. was admitted to Baptist Hospital through the emergency room due to exacerbation of her asthma. (R. 266, 307-21). Treatment notes indicated that A.T.G. had "been out of her nebulizer medication and her inhaler." (R. 312). A chest x-ray revealed no abnormalities. (R. 321). Her asthma was treated and she was released. (R. 267).

A.T.G. was next seen at the emergency room on September 11, 2000, complaining of shortness of breath and wheezing. (R. 285-89). She was diagnosed as suffering from an acute asthma attack and bronchitis. (R. 285, 287). She was prescribed Amoxil, Prelone and Ventalin. (R. 285). She was also directed to see her primary care physician the next day. (R. 289).

On August 7, 2001, A.T.G. underwent a consultative evaluation by Dr. Yolanda Patterson, at the request of the Social Security Administration. (R. 322-23). Dr. Patterson opined that A.T.G. suffered from "[a]sthma, probably not well managed in view of no primary care provider during regular follow-up." (R. 323).

On March 3, 2002, A.T.G. was seen at Baptist Hospital's emergency room complaining of coughing and trouble breathing. (R. 92). Treatment notes indicated a smoker in the home. (R. 93). A.T.G. was diagnosed as suffering from acute exacerbation of asthma. After being counseled, she referred for follow-up and released. (R. 94-95).

A.T.G. was first seen by was seen by Dr. Margaret Jakes of Montgomery Allergy and Asthma Associates on February 7, 2002. (R. 101). Her chief complaint was asthma and her mother complained that A.T.G.'s current medications made her hyperactive. (*Id*.) Dr. Jakes prescribed A.T.G. Singulair and Pulmicort instead of Ventolin and Prednisone. (R. 101-02, 146-47). In a follow-up visit on March 14, 2002, Dr. Jakes prescribed A.T.G. Albuterol, Flovent, Orcipred, Biaxin, Singulair and Pulmicort. (R. 81, 100, 145).

A.T.G. was next seen on November 26, 2002. (R. 80, 99, 144). Dr. Jakes noted that it had been eight (8) months since A.T.G. had been seen; she had borrowed a prescription from her grandmother; and there was "[i]nadequate compliance." (*Id*.) Dr. Jakes prescribed Singulair, Pulmicort and Albuterol. (*Id*.).

On January 3, 2003, A.T.G. was seen by Dr. Jakes because she was coughing and wheezing. (R. 79, 98, 143). Dr. Jakes noted that A.T.G. had not used Albuterol but her allergies and asthma were improved. (*Id*.). Dr. Jakes prescribed Pulmicort, Flovent, Singulair and Albuterol. (*Id*.) On January 23, 2003, Dr. Jakes determined that A.T.G. was suffering from seasonal allergies as well as asthma. She prescribed Pulmicort, Flovent, Singulair, Albuteral, Prelone and Nasacort. (R. 78, 97, 142).

A.T.G. was next seen by Dr. Jakes on June 24, 2003 complaining of coughing. (R. 77,

96, 141). Dr. Jakes prescribed Nasacort, Robitussis, Pulmicort, Flovent, Singulair, and Albuteral. (*Id.*)

On December 7, 2004, A.T.G. presented at Baptist Hospital's emergency room complaining of an asthma attack. (R. 72). According to the treatment notes, A.T.G. was out of medication. (R. 72-73). She was given prescriptions and released. (R. 75).

On June 24, 2005, the day after her third administrative hearing, A.T.G. was seen by her treating physician, Dr. Jakes. (R. 76). Dr. Jakes noted that A.T.G. was "[l]ast seen 2 years ago!" (R. 76). Treatment notes include "[i]nadequate control," "poor compliance" and "ran out of Singulair and pulmicort months ago. Using Albuterol only – borrowed from grandmother." (*Id.*). Dr. Jakes prescribed Singulair, Pulmicort, and Albuterol. (*Id.*).

**B. Whether the ALJ's finding that, although A.T.G.'s asthma is a severe impairment, she does not have marked limitations is supported by substantial evidence**.

The plaintiff argues that, with her asthma, A.T.G. "cannot function physically as a normal child." The ALJ concluded that although A.T.G. suffers from asthma which is a severe impairment, "the evidence fails to establish functional equivalence" because A.T.G. has marked limitations in only one functional domain – health and physical well-being. (R. 26).

The crux of this case is the ALJ's determination of the severity of A.T.G.'s functional limitations. In order to functionally equal a listing, A.T.G.'s impairments must result in "marked" limitations in two or more functional domains or "extreme" limitation in one functional domain. 20 C.F.R. § 416.926a(a). The ALJ was required to consider six areas of

development: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being. (*Id*. at 416.926a(b)). The ALJ concluded that A.T.G. has "no limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for herself. (R. 268). In addition, the ALJ found that A.T.G. has "less than marked" limitation in the domain of moving about and manipulating objects. (*Id*.). However, the ALJ found that A.T.G. has "marked limitation" in the area of health and well-being. (*Id*.). The ALJ's determination is supported by substantial evidence. Although the medical records demonstrate that A.T.G. has been treated at the emergency room for recurrent asthma attacks, she has been treated sporadically and intermittently. For example, from the alleged date of onset, A.T.G. was treated at Baptish Hospital's emergency room once in 2000, once in 2002, and once in 2005. Treatment notes also indicate that A.T.G. has been without her medication, often for months at a time. In addition, x-rays also reveal no abnormalities in her lungs. Finally, A.T.G.'s teachers have noted that although she has had asthma attacks at school, she has consistently functioned at her age and grade level. Her social skills and interaction with others are age-appropriate with no apparent impairment. A.T.G. testified at the third administrative hearing that she has asthma attacks twice or perhaps three times per month and she treats the attacks with medication. (R. 347).

    A.T.G.'s mother complains that A.T.G. is limited in her ability to "go outside and play with the other kids," and she "sits on a bench" during recess at school. (R. 342). The mere

fact that A.T.G. has asthma and cannot be outside for extended periods of time is insufficient to support a finding that she has an extreme area of functioning sufficient to meet or equal a Listing. A.T.G.'s mother's testimony does not support a finding that A.T.G. has an "extreme" limitation in these or any other areas of functioning. Her testimony does not support a finding that A.T.G. has more than a marked limitation in the area of health and physical well-being. Thus, the ALJ's conclusion that A.T.G. does not have more than a "marked" impairment in the health and physical well-being area of functioning is supported by the record.

  **C. The decision of the ALJ is not supported by substantial evidence because the ALJ improperly discredited the plaintiff's testimony**. The plaintiff argues that, as A.T.G.'s mother, her testimony "was given based on my daily observation of the claimant." (Pl's Br. at1, ¶ 2). Liberally construing her brief, the plaintiff is arguing that the ALJ failed to properly consider her testimony. This argument does not withstand scrutiny. A review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the testimony and considered all of the evidence in reaching his decision. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). Relying on the treatment records, objective evidence, and other evidence in the record, the ALJ concluded that the plaintiff's allegations regarding the extent of A.T.G's limitations, while sincere, were "out of proportion to the objective medical evidence of record." (R. 26). After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence.

**D. Whether the ALJ failed to properly question the medical expert.** A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

Taken alone, the opinion of a non-examining reviewing physician does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991). The evidence in the record supports the ALJ's reasons for relying on Dr. Evans. To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding A.T.G.'s limitations rather than Dr. Evans, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges, supra.*

**E. Whether The ALJ failed to adequately inform her of her right to obtain representation, or to discharge his duty to assist the pro se claimant in developing the medical evidence necessary to prove her case**. Coupled with this issue is the plaintiff's argument that she received insufficient notice of the June 23, 2005 hearing. In essence, the

plaintiff contends that she did not understand the purpose of the third administrative hearing.

> Due to my lack of knowledge concerning the Social Security Act, I did not fully understand how to go about proceeding with my daughter's claim. I thought I was there for the ALJ to reverse his decision from the previous hearing.

(Pl's Statement of Issues, doc. # 12, at 2, ¶ 6).

The right to a representative is a statutory right, 42 U.S.C. § 406, which may be waived. *Smith v. Schweiker,* 677 F.2d 826 (11th Cir. 1982). The plaintiff appeared at the administrative hearing without an attorney. She was notified in writing prior to the hearing that she had a right to representation by an attorney. This was the plaintiff's third administrative hearing and she was represented by counsel at the previous two hearing. At the hearing, the ALJ noted that the plaintiff was sent a letter explaining her right to have representation. The plaintiff admitted she received this letter. (R. 336-37). The ALJ also explained to the plaintiff that there were attorneys who would provide representation to her and that she would not have to pay unless she was successful. (R. 337). The ALJ asked the plaintiff if she wanted additional time to secure an attorney. The plaintiff responded that she wanted to go ahead with the hearing without representation.[6] (*Id.*). The ALJ explained the

---

[6] The colloquy was as follows:

ALJ: Now, Ms. Grevious, you have requested a hearing, well, I note from the record that you are appearing today without the assistance of an attorney or a non-attorney representative, is that correct?
WTN: Yes, sir.
ALJ: Now, I advised you in a letter where, you were originally represented in this case, had two prior hearings and your attorney withdrew and you have been informed in the letter that you may still obtain an attorney or a non-attorney representative. You were also provided a statement of your right to representation and that was in a letter, the last letter was dated June, today, and it is Exhibit 21B which you were provided earlier this morning. Did

administrative procedure, including the reason for the hearing as well as the taking of evidence. (R. 338-39). The ALJ also advised the plaintiff that if she did not understand "anything," to let him know and he would "try to explain it to [her]." (R. 340).

In *Brown v. Shalala,* 44 F.3d 931 (11th Cir. 1995), the court held that a claimant had not knowingly and intelligently waived her tight to be represented at a hearing before an ALJ. The court has carefully considered the colloquy in this case and finds that, unlike in *Brown,* the plaintiff's waiver here was knowing and intelligent. The ALJ insured that the plaintiff understood that there were sources of representation which would not cost her money. Furthermore, the ALJ offered her the option of continuing the hearing so she could find representation. The offer of this option represents a significant difference when compared to the situation in *Brown* where the ALJ, after noting that the plaintiff was informed of her right

---

                      you read the letter and its enclosures?
WTN:  Yes, sir, I did.
ALJ:   Are you aware there are attorneys or non-attorney representatives who specialize in this type of case and will only receive a fee if you win your case?
WTN:  Yes, sir.
ALJ:   Have you attempted to obtain a representative since your last representative withdrew?
WTN:  No, sir, I haven't.
ALJ:   Would you like additional time to obtain a representative or you wish to proceed here today without the assistance of an attorney or non-attorney representative?
WTN:  I wish to proceed.
ALJ:   Do you understand your right to representation?
WTN:  Yes, sir.
ALJ:   All right, let the record reflect that the claimant has been fully advised to the right to representation at this hearing and has waived that right. . .

(R. 336-37).

to representation, stated, "You have signed a waiver saying that you understand that and you're ready to proceed today without . . . a representative." The mild coercion of this quoted statement is vastly different from the facts of the case now before the court where the ALJ was careful to insure that the plaintiff knew of her right, knew she could seek representation at no cost and knew that she could have additional time to get a representative. The ALJ did not err in proceeding with the hearing without a representative for the plaintiff.

Similarly, although the plaintiff complains that she was not given twenty days' notice of the administrative hearing, she declined the opportunity to continue the hearing. In addition, at no point did she request additional time to prepare for the hearing. More importantly, the plaintiff has not shown she was prejudiced. *See Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985).

> This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision. *See Smith [v. Schweiker,* 677 F.2d 826, 830 (11th Cir. 1982)] (relevant inquiry is whether the record reveals evidentiary gaps which result in unfairness or clear prejudice).

*Id.* at 1540.

The plaintiff is entitled to no relief on this basis.

**F.  Whether the ALJ failed to fully properly develop the record because he failed to secure teacher questionnaires from all of A.T.G.'s teachers and he failed to consider a note from A.T.G.'s teacher.** Notwithstanding the plaintiff's valid waiver of her right to representation at the hearing, when a disability claimant is unrepresented by an attorney, the

duty of an ALJ to develop a full and fair record rises to a special level. *Smith,* 677 F.2d at 829. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The plaintiff argues that this case should be remanded because the ALJ did not fulfill that duty because he did not secure teacher questionnaires from more than one teacher and he did not consider a note she submitted from one of A.T.G.'s teachers. Again, a remand to the Commissioner is not warranted unless the plaintiff shows prejudice. *Kelley, supra*.

The ALJ considered a questionnaire from A.T.G.'s fifth grade teacher, Sonya Mocks. Although Ms. Mocks noted problems with absenteeism and tardiness due to her asthma, she indicated that A.T.G. "performs at the same level as most students her age." (R. 63 & 65). Ms. Mocks noted that A.T.G. did "not have difficulty interacting with her classmates." (R. 65). Also contained in the record is a December 15, 1999, questionnaire from A.T.G.'s kindergarten teacher. (R. 202-06). Ms. Simon indicated that A.T.G. "perform[ed] at age level, a little behind because of absenteeism." (R. 203). Her social skills, interaction and functioning were "age and grade appropriate." (R. 204). Ms. Simon described A.T.G.'s asthma attacks and wrote a note indicating that she had "witnessed [A.T.G.] in a state where I felt she was grasping for breath. When I've observed her having problems breathing, she tends to double over to help herself breath." (R. 205-06). It is undisputed that A.T.G. suffers from asthma and has had asthma attacks at school. Any additional questionnaires from teachers would be cumulative in that regard. The plaintiff is entitled to no relief on this basis.

**CONCLUSION**

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that A.T.G. is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 5th day of February, 2008.

        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE